UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

UNITED STATES,

       Plaintiff

v.

BARRY FISCHER LAW FIRM, LLC, et al.,

       Defendant.

------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10-24-2012

10 Civ. 7997

**OPINION**

  This interpleader action concerns the disposition of approximately $8.2 million seized in 1999 by the United States Government from two United States bank accounts controlled by Kesten Development Corporation ("Kesten"), a British Virgin Islands corporation, and its parent, Turist-Cambio Viagens Turismo LTDA ("Turist"), a Brazilian company.

  Interpleader defendants Tammy Fu and Eleanor Fisher[1] as liquidators ("the Liquidators") of Trade and Commerce Bank ("TCB") of the Cayman Islands now move for summary judgment with regard to $6,871,042.36 from one of the two accounts. Interpleader defendant Federative Republic of Brazil ("Brazil") cross-moves for summary judgment with respect to the same funds.

  Brazil's motion for summary judgment is granted and the Liquidators'

---

[1] On May 16, 2012, Fu and Fisher were appointed by the Grand Court of the Cayman Islands to replace the Liquidators previously involved in this case, Richard Fogerty and G. James Cleaver.

motion for summary judgment is denied.

## Background

This action has been the subject of two previous opinions by this court. In the first, the court denied a motion to dismiss Brazil's claim to the funds, <u>United States v. Barry Fischer Law Firm, LLC</u>, No. 10 Civ. 7997, 2011 U.S. Dist. LEXIS 756, at *1-6 (S.D.N.Y. Jan. 5, 2011). In the second, the court denied Brazil's motion to dismiss the claims of the Liquidators and erstwhile interpleader defendant Barry Fischer Law Firm, LLC ("Barry Fischer"), <u>United States v. Barry Fischer Law Firm LLC</u>, No. 10 Civ. 7997, 2012 U.S. Dist. LEXIS 23212 (S.D.N.Y. Feb. 23, 2012).

Turist is a Brazilian company engaged in currency exchange, and Kesten, a company incorporated in the British Virgin Islands, is its wholly owned subsidiary. In the late 1990s, the companies' principals—Antonio Pires de Almeida, Ruriko Inoue, and Roseli Ciolfi ("the Pires defendants")—were investigated for illegal money laundering in both the United States and Brazil. As a result, in 1999 the United States Government seized $6,871,042.36 from Kesten's so-called "Venus" account at the New York branch of MTB Bank and $1,345,771.64 from Turist's so-called "Tadeland" account at the New York branch of EAB Bank.

In 2000, the Government commenced a forfeiture proceeding concerning the funds in the U.S. District of New Jersey, in which it argued that the funds were the fruits of a conspiracy to launder drug money. The action was

2

ultimately dismissed and the money was ordered returned to Kesten and Turist because the Government failed to demonstrate that the funds were directly traceable to illegal activities. See U.S. v. $8,221,877.16, No. 00 Civ. 2667, slip op. (D.N.J. July 6, 2004).

Before the money was returned, the Federal Court in Curitiba, Brazil issued a Seizure Order covering the two accounts. Soon thereafter, Brazil initiated the criminal prosecution of the Pires defendants for money laundering and other offenses. In response to the actions of the Brazilian government, the U.S. District Court for the District of Columbia issued a restraining order to prevent the return of the funds to the companies and their principals pending the outcome of the Brazilian proceedings.

In 2010, the U. S. Court of Appeals for the District of Columbia Circuit issued a decision in an unrelated case that undermined the legal basis for that restraining order. It was vacated shortly thereafter.

In the meantime, conflicting claims to the seized money had come to the attention of the U.S. Government, prompting the filing of this action. The claims are as follows.

Brazil claims an interest in the money based upon its seizure order and the criminal prosecution of the Pires defendants. Barry Fischer claims an interest based upon unpaid legal bills that accrued in the course of his successful defense of the forfeiture action in the District of New Jersey. The Liquidators claim an interest stemming from a 2010 default judgment in the British Virgin Islands in the amount of $15,936,329.00, which judgment was

3

subsequently recognized in the Southern District of New York Bankruptcy Court. The claim underlying the default judgment was that Kesten had knowingly received funds stolen from TCB. Lastly, Kesten and Turist were named as interpleader defendants since the funds had come from accounts under their control, but neither company has appeared in this action despite being served through their principals in Brazil via Letters Rogatory.

Much has occurred since the court's most recent opinion. First, on February 17, 2012, the Sixth Specialized Federal Court of São Paulo (the "São Paulo Court") convicted Antonio Pires de Almeida of fraudulent management of a financial institution and Ruriko Inoue and Roseli Ciolfi of illegal remittance of foreign exchange. That court also found that Kesten was a shell company dominated by Pires and operated for illegal purposes and that the funds in Kesten's Venus Account represented proceeds of the crimes for which the Pires defendants were convicted. Accordingly, the court ordered the funds confiscated.[2] That decision has been appealed by both sides, and pursuant to Brazilian law, execution of the trial court judgment has been stayed.

Secondly, the Liquidators and Barry Fischer entered into an agreement regarding their claims to the funds from the two accounts. Barry Fischer agreed to assert a claim against the $1,345,771.64 in the Tadeland account only, and the Liquidators agreed to assert a claim against the $6,871,042.36 in

---

[2] The parties contest the proper meaning of the Portuguese term "confisco" found in the judgment. It has been variously interpreted as sequestration, confiscation, and forfeiture. The dispute appears to be of little consequence, as the Brazilian court invokes Article 91(II)(b) of the Brazilian Penal Code, which plainly appears to be a Brazilian analogue of forfeiture provisions under United States law.

4

the Venus Account. Subsequently, Brazil and Barry Fischer agreed to divide the funds in the Tadeland Account, and by the court order dated August 17, 2012, that money was distributed to Brazil's domestic counsel. Hence the only claims remaining for adjudication are claims to the Venus Account by Brazil and the Liquidators.

### The Present Motions

The Liquidators now move for summary judgment on the ground that they have a final judgment against Kesten that should be enforced against the funds in the Venus Account, which funds belong to Kesten by virtue of 2004 New Jersey order and also because the criminal conviction in Brazil is not final. They further contend that even if Brazil has a claim to the funds based upon the São Paulo judgment, that claim cannot be enforced in this action because the penal law rule bars a domestic court from enforcing the penal laws of a foreign nation.

Brazil cross-moves for summary judgment on several grounds. It first argues that the decision of the São Paulo Court establishes that the Venus funds are forfeit to Brazil as of the date of the crimes of the Pires defendants, which preceded the claims of the Liquidators by several years. Second, it argues that the Liquidators do not have a viable claim in any event, because they cannot directly trace their claim to the specific funds at issue in this case and because their default judgment from the British Virgin Islands was obtained by dubious means. Brazil does not seek the immediate release of the Venus funds to the Brazilian government. Rather, Brazil seeks the transfer of

the funds to the São Paulo Court, where the money will be held pending the adjudication of the Pires defendants' appeals.

## Discussion

Summary judgment may be granted if there is no genuine issue as to any material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material only if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The movant has the burden of showing that no genuine factual dispute exists. Id. However, in determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor. Id. at 249. "When both sides have moved for summary judgment, each party's motion is examined on its own merits, and all reasonable inferences are drawn against the party whose motion is under consideration."Chandok v. Klessig, 632 F.3d 803, 812 (2d Cir. 2011).

The present motions largely concern questions of law ripe for adjudication, but the parties dispute facts related to one critical issue: whether Kesten was a shell company dominated by the Pires defendants, such that its separate legal identity under the law of the British Virgin Islands can be discarded and the wrongdoing of its principals, as well as the legal findings of the São Paulo Court, imputed to it.

The court holds that there is no genuine issue on this point. The entire

record of the case demonstrates that Kesten was created to facilitate the illegal operations of the Pires defendants. This finding is supported by the opinion and trial record of the Brazilian criminal case against the Pires defendants; by Barry Fishcer's documentation of its defense of the New Jersey forfeiture action; by the Liquidators' very statement of claim in the British Virgin Islands, wherein the Liquidators' detail Antonio Pires de Almeida's manipulation of Kesten for illegal purposes; and by the exhibits produced in the course of the court's decision on the Liquidators' motion to dismiss Brazil's claim, which resulted in the court ordering that Kesten be served in Brazil through the Pires defendants.

Accordingly, the legal findings of the São Paulo Court bind Kesten to the same extent that they bind the Pires defendants. Indeed, the court finds that the disposition of the present motion hinges entirely on the effect of the Brazilian criminal proceedings on the instant action. In this regard, the court holds that the judgment of the São Paulo Court collaterally estops the Liquidators from claiming an interest in the Venus funds based upon Kesten's interest, which was extinguished by the criminal verdict against the Pires defendants. In reaching this holding, the court resolves several issues of law, to which it now turns.

The judgment of the São Paulo Court cannot affect this action unless it is first recognized by this court. Since an action for statutory interpleader depends on diversity of citizenship, the court looks to New York law to determine whether the judgment should be recognized. See Am. Fid. Fire Ins.

Co. v. Paste-Ups Unlimited, Inc., 368 F. Supp. 219, 223-224 (S.D.N.Y. 1973) (noting that Erie requires the application of state substantive law in statutory interpleader actions). In New York, foreign judgments ineligible for recognition under the Uniform Foreign Money Judgments Recognition Act may still be recognized under the common law principle of international comity. See Allstate Ins. Co. v. Administratia Asigurarilor De Stat, 962 F. Supp. 420, 425 (S.D.N.Y. 1997). Comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience." Hilton v. Guyot, 159 U.S. 113, 163-64 (1895). Under these principles, New York courts will recognize a foreign judgment absent a showing of fraud in the procurement of the judgment or a showing that recognition of the judgment would do violence to some strong public policy of the state. See Sung Hwan Co., Ltd. v. Rite Aid Corp., 7 N.Y.3d 78, 82 (N.Y. 2006). But the "public policy inquiry rarely results in refusal to enforce a judgment unless it is inherently vicious, wicked or immoral, and shocking to the prevailing moral sense." Id.

The Liquidators do not contend that the São Paulo judgment was infected by fraud or contrary to New York public policy. Rather, they argue that the court already rejected comity arguments when it declined to dismiss the claims of the Liquidators and Barry Fischer in deference to the São Paulo Court. See United States v. Barry Fischer Law Firm LLC, 2012 U.S. Dist. LEXIS 23212, at *9-12 (S.D.N.Y. Feb. 23, 2012). But the mere fact that the court did not accept a comity argument in one context does not mean that the concept

8

was thereby banished from the case. Indeed, the court's opinion contemplated the continuation of both proceedings until one could be used for purposes of *res judicata* (in the broad sense) in the other. Id. at *9. That is precisely what has transpired. Accordingly, the court should recognize the criminal judgment against the Pires defendants in the São Paulo Court.

In that judgment, the São Paulo Court ordered the Venus Account funds forfeit as the proceeds of financial crimes perpetrated by the Pires defendants. Brazil argues that this finding collaterally estops the Liquidators from claiming an interest in the Venus Account funds based upon their default judgment against Kesten.

The Liquidators contend that they cannot be estopped by the São Paulo judgment for several reasons. First, they argue that the judgment cannot have preclusive effect in this action because it does not have that effect in Brazil. In that country, criminal judgments are automatically stayed pending appeal and thus not final.

It is often said that a judgment is to be given the preclusive effect it has in the court that rendered it, but that doctrine does not apply when the judgment of a foreign nation's court is at issue. Rather, the preclusive effect of a foreign judgment is determined by reference to U.S. law, state or federal. Alfadda v. Fenn, 966 F. Supp. 1317, 1329-1330 (S.D.N.Y. 1997). There are good reasons for this disparate treatment. Collateral estoppel between domestic courts is informed by the Full Faith and Credit Clause and principles of federalism. See id. at 1329. These considerations are peculiar to our legal

system and do not apply when the judgment of a foreign nation's court is at issue.[3] In that event, the doctrine of collateral estoppel is chiefly concerned with limiting wasteful and redundant litigation, so when it is apparent that a certain issue has been litigated abroad, that issue should not be relitigated provided that it was determined conclusively by domestic standards. Furthermore, U.S. courts lack the expertise to ascertain whether foreign courts employ other mechanisms to prevent redundant litigation. See id. Thus the court turns to New York law to determine whether the São Paulo judgment has preclusive effect in this action.

In New York, "an issue decided in a criminal proceeding may be given preclusive effect in a subsequent civil action." D'Arata v. New York Cent. Mut. Fire Ins. Co., 76 N.Y.2d 659, 664 (N.Y. 1990). Furthermore, a criminal conviction is still a final judgment for purposes of collateral estoppel when an appeal is pending. See United States. v. 303 West 116th Street,, 901 F.2d 288, 292 (2d. Cir. 1990); Parkhurst v. Berdell, 110 N.Y. 386, 392 (N.Y.1888). This is the case even when that criminal conviction was rendered by a foreign court. See United States v. $294,600, No. 91 Civ. 2567, 1992 U.S. Dist. LEXIS 10213, at *13-14 (E.D.N.Y. June 30, 1992).[4] Thus the judgment of the São Paulo Court can preclude the Liquidators in this action provided that the other requisites for the application of the doctrine are met.

---

[3] Brazil has a federal system as well, but not all federal systems allocate power in precisely the same manner, and the political and jurisprudential ramifications of that allocation need not be identical.

[4] United States v. $294,000 applies federal common law in reaching its determination but the court readily determines that New York law would dictate the same result, given the substantial identity of the doctrines of comity and collateral estoppel in the two bodies of law.

10

In New York, collateral estoppel has two essential elements. First, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination. Juan C. v. Cortines, 657 N.Y.S.2d 581, 583 (N.Y. 1997).

In declaring the funds forfeit, the São Paulo Court determined that they belong to Brazil rather than the Pires defendants pursuant to Brazilian Penal Code Article 91(II)(b) . Furthermore, Brazilian forfeiture law, like that of the United States, provides that upon a finding of forfeiture, the sovereign's title relates back to the date of the crimes producing the assets. See Decl. of Nadia de Araujo, pp. 8-11. The judgment thus entails that Brazil's title to the Venus Account funds predates the District of New Jersey decision in the civil forfeiture action brought by the Government and predates the claims of the Liquidators. Obviously, this state of affairs would not affect the Liquidators if their claim was unrelated to the matters litigated in Brazil. But they seek to recover on a default judgment against Kesten. Their theory necessarily implies that Kesten has good title to the funds in the Venus Account. That dispositive issue was decided by the São Paulo Court.

Nor is it of consequence that neither Kesten nor the Liquidators were formally parties to that action. As discussed *supra,* the record establishes that Kesten was entirely dominated by the Pires defendants and had no legal identity apart from them. Thus, Kesten is obviously bound by the São Paulo judgment. As for the Liquidators, while it is generally true that a nonparty to

11

prior litigation is not bound by determinations therein, a nonparty may nonetheless be collaterally estopped "by having a relationship with a party to the prior litigation such that [their] own rights or obligations in the subsequent proceeding are conditioned in one way or another on, or derivative of, the rights of the party to the prior litigation." D'Arata v. New York Cent. Mut. Fire Ins. Co., 76 N.Y.2d 659, 664 (N.Y. 1990). Again, the Liquidators claim depends entirely on Kesten's entitlement to the funds. Their claim is, in other words, derivative of Kesten's claim. Thus, the Liquidators are collaterally estopped by the São Paulo Court's finding that Brazil was entitled to forfeiture of the Venus Account funds.

Finally, the court concludes that the Pires defendants had a full and fair opportunity to litigate the forfeiture issue in the São Paulo court. That court reached its conclusions after years of proceedings in a legal system that affords criminal defendants substantial rights. The fairness of those proceedings is evidenced by the thoroughness of the decision itself and the fact that certain defendants were acquitted of the crimes with which they were charged.

Thus, the court concludes that the Liquidators are collaterally estopped from asserting that Kesten has good title to the funds from the Venus Account. This holding compels the court to enter summary judgment in favor of Brazil.

The only issue that remains is whether it would violate the penal law rule to grant summary judgment in favor of Brazil and transfer the Venus Account funds to Sixth Specialized Federal Court pending the disposition of the appeals from the São Paulo judgment. The penal law rule provides that

"federal courts do not possess jurisdiction over an action to enforce the penal laws of a sovereign state...." Republic of Colom. v. Diageo N. Am. Inc., 531 F. Supp. 2d 365, 401 (E.D.N.Y. 2007). The rule "applies not only to prosecutions and sentences for crimes and misdemeanors, but to all suits in favor of the State for the recovery of pecuniary penalties for any violation of statutes for the protection of its revenue, or other municipal laws, and to all judgments for such penalties." Wisconsin v. Pelican Ins. Co., 127 U.S. 265, 2 1 (U.S. 1888). Two policy concerns underlie the rule: 1) foreign relations may be affected when one nation's courts analyze the validity of another nation's penal laws; 2) the executive branch should decide when our nation will aid another in enforcing penal laws. See Moore v. Mitchell, 30 F.2d 600, 604 (2d Cir. N.Y. 1929) (L. Hand, J., concurring).

The penal law rule applies in fullest force when a foreign nation brings suit in a United States court to enforce its laws or to enforce a penal judgment rendered in that nation. See Diageo N. Am. Inc., 531 F.Supp. 2d at 388. In that event, a domestic court is asked to directly interpret and apply a foreign law and explicitly or implicitly ascertain its validity. See id.

Here, the court has not directly applied Brazilian law. In recognizing the São Paulo judgment, the court merely noted the integrity and thoroughness of the proceedings and identified the determinations of that Court that affect this case. Furthermore, the court need not use Brazilian law to extract payment from any party. Rather, the Venus Account funds are to be transferred to the custody the Sixth Specialized Federal Court

13

where a Brazilian court will administer them in accordance with Brazilian law.[5] In short, the court's decision will not impinge upon Brazil's sovereignty nor will it punish a party based upon a misapplication of foreign law.

Nor is there concern that this decision will interfere with the prerogatives of the executive branch. After all, the Government brought this interpleader claim.

**Conclusion**

For the foregoing reasons, Brazil's motion for summary judgment is granted and the Liquidators' motion for summary judgment is denied.

This opinion will resolve docket items numbers 67 and 81.

So ordered.

Dated: New York, New York
October 24, 2012

_____
Thomas P. Griesa
U.S. District Judge

---

[5] It should be noted that the Liquidators have counsel in Brazil should the forfeiture ordered by the São Paulo court be reversed on appeal.